2012, 5062. I don't see Ms. Beck here. Is this Ms. Beck? Fine, thank you. But we'll hear from Mr. Boland first. Thank you. May it please the Court, I'm James Boland, Counsel for the Appellant Orion Technology Incorporated. I'm with my co-counsel Lars Anderson. This bid protest case in this appeal raises a fundamental question of standing, interested parties standing in a bid protest. The Court of Federal Claims dismissed Orion's bid protest on the basis that he lacked standing to challenge the disqualification of its proposal prior to the Army evaluating the proposal. And the Court also discussed in the decision and indicated that the Court believed that Orion's disqualification or the Army's disqualification of Orion's proposal had a rational basis. Both of these decisions or indications in the trial court decision were erroneous. But the clear fact is that Orion didn't provide all the data, the cost data for the subcontractors, right? That's correct. And that's not in dispute in this case. But the data that was omitted... And that the regulations provide for completeness and compliance with exact deadlines? They do. But what's important here is that the nature of the data that was omitted makes this case different from a typical case where an offeror might submit a proposal and... Supposing Orion never provided that data, ever? If Orion never provided that data, under the solicitation, the solicitation authorized the Army not to make an award to a contractor and used the word several places, may not make or may not award a contract to a proposal that lacked the supporting price data. They may reject, right? It may reject. So it's discretionary in your view. It's discretionary, but it's... Can I ask a background question? Certainly. Your brief is all designed around saying, you know, if we could only got ourselves, you know, into the competitive range. If they put us in the competitive range, we would have been home free because then discussions would have been open. The opportunity to submit additional information is there. The subsequent changes in the contract, we would have been there. Let me back up away from the designation of the competitive range. Before striking a competitive range, we saw the list, you know, the names and the numbers that are in the brief. Does the contracting officer have to do a price reasonableness and cost realism test first? And sequentially. I don't believe that under the FAR, a contracting officer has to conduct realism first before the competitive range is established. They did in this case. They did conduct a preliminary realism and reasonableness analysis. Right. But say for... I mean, your competitive range is based on the fact that the grossed up number... I mean, we're not supposed to talk about the numbers because they're private. Just say your number was X. And you were within a range of eight or nine other people. So you said, oh, we're in the competitive range. But it seems to me that that alone wouldn't be enough because if your numbers were all fake, if all you had done was put in a grossed up number, we'll perform the contract for this, they couldn't put you in the competitive range, right? Well, no, I think... Just follow with me because, I mean, if all you did was to say, we'll be happy to perform the job for $70 million. Right. And it turned out that $70 million was in a zone between 60 and 80 of all the other people. So just having said you'd perform it for that sum, couldn't possibly... If they put you in the competitive range, people would say it was error. Because they don't have any idea of how those numbers are built up. They don't know whether it's reasonable or whatever. Right? Well, I would disagree. The competitive range is based under the FAR, FAR 15-306, is based on the contracting officer determining which of the pros are the most highly rated. And that goes directly to the best value... What I'm trying to get at here is that to do price reasonableness or to do cost realism, cost realism, you take a look at what your costs are and you're asking, are they realistic? And the information that you didn't supply on the CLINs, on the line items, were the backup information for particular salaries, if you will. Right. Right? So let's assume that in your real proposal with the stuff that didn't come in, you were going to have paid the boss in one of those units 98% of the salary for the whole unit, and you were going to underpay everybody else. The contracting officer would say, that's not reasonable. In order to decide whether or not your costs are reasonable, especially when you're building up employee costs, you have to look and see what those employee costs are. Right? And that's... Isn't that correct? That is correct. And your client didn't supply that backup information. And so what the government's saying here is they couldn't have done a... couldn't possibly have done a cost realism assessment on your proposal without that backup information. I would disagree. Orion did provide the total amount that Orion was proposing for each labor position. This was not just simply a lump sum proposal, and it was not a mystery how much the lump sum would break out. What was provided was a lump sum. Orion provided individual CLIN pricing for the... And what would happen if your breakouts were irrational? Including the total labor charge for each labor position. And this is what's important. Suppose the breakout information was irrational, and that's the issue. I'm sorry. I got you going in the wrong direction. I think what you really want to talk about is standing, because we're not going to get to whether or not the agency was behaving rationally if you don't have standing. Right. And you say you concede that you don't have standing, or you don't want to argue standing on the substantial chance of prevailing, winning the contract. You want the weak standard. Correct. And that's simply because... And what is your competitive injury that is here under weaks that is regressible by judicial action? The injury is Orion's disqualification from competition before the Army even evaluated its proposal. The Army never went far enough to decide whether Orion's proposal was going to be one of the most highly rated proposals and warranted discussion. On this piece of the argument, your brief treats the decision by Judge Sweeney below as if she ruled that the Army was required to reject your proposal. Where in the opinion does it say that? Judge Sweeney did not say it was required, but the way that the analysis followed, the opinion stated that Orion's omission precluded an evaluation altogether. The issue is really not important to your case, is it? I mean, the way you describe the request for proposal, the requirements, was that you were realizing that the agency may reject you. They may turn you down if you're incomplete. They're not required to do so. Right? Correct. So, I didn't understand why you were making so much fuss out of trying to read into Judge Sweeney's opinion that she had held that the agency was required to turn you down. The trial court concluded that Orion was not injured at all from the disqualification proposal. Normally, putting that aside, I mean, if a company submits a proposal to compete for a contract and they're kicked out at the very beginning, I mean, most people would agree. She did that under the weak analysis. Her weak analysis is weak, in my judgment. That's where she decided, well, you weren't hurt, so go away, because you couldn't have won. Right. The fact that the solicitation said, and I think this is an important point, said that an incomplete pricing submission may not be considered for award and did not say that it shall not be considered for award or will not be. But may is good enough. Well, and that's what comes to timing in this case. And we're not objecting and saying that the Army, under no circumstances, could not have rejected Orion. But the question is, do you make that decision before you evaluate proposals, or do you sort of wait and see? Well, your point, I think, is that because the agency had the discretion not to reject her proposal, because the way the request comes up is to say, we may reject you if you're not complete. I mean, it's hard to believe, for example, if the request for proposal called and said, well, your proposal has to be in triplicate, and you only submitted two copies. It's hard to believe that an Army would throw you out over that, right? You would argue that'd be arbitrary. Right. What you're saying is that when you're rejected at the front door with no analysis at all, where the agency had the authority to let you in if they wanted to, that you have the legal right standing to test whether or not their rejection was arbitrary or capricious or otherwise not in accordance with law, right? That's exactly right. And that's... You pitched. Judge Sweeney threw him out as, I guess, almost frivolous at the end. You had some pretextual arguments. I believe you argued that you were being rejected for discriminatory reasons, right? So if it turned out to be true, I mean, let's say, for example, a contracting officer rejected a proposal because the boss said, we're against that company for some reason. Under Sweeney's theory, you would never be able to adjudicate. You'd never be able to find out whether that was true. Right. And that's sort of the case. I think you answered my first question eventually. Okay. My first question was, supposing you never provided the missing subcontractor data and you were starting to get into May and then Judge Clevenger asked you about it, and eventually you said, well, we're not saying that the Army couldn't. Supposing you filed the entire thing, the entire proposal, seven days late, would the Army be justified in rejecting it? Absolutely. There's no question. And there's been discussion at the solicitation, warned off words that the Army may not hold discussions. And suppose the Army chose not to have discussions. We would also concede that in that situation, we would not have an opportunity to submit a revised proposal and we would be out of luck. By the way, the Army says that lots of more than like a half dozen other folks were rejected at that time. Is that correct or not correct? That's my understanding from the record. I'm not privy to who was rejected or not. They said, I'm reading from the government's brief, Orion also falsely claims that the Army afforded all other offers the opportunity to submit revised proposals, and they say that's wrong. And that should probably be clarified. All offers that were not rejected, and I don't know if we had that, but of the offers who didn't mess up. Right. What you're asking us to do is to apply the WEEKS standard on standing to your case where you admit that the facts are a little different because in WEEKS there really hadn't even been a proposal put in. What's puzzling to me about WEEKS is that WEEKS seems to conflate the statutory standing requirement down to the level of Article III standing. And the whole purpose behind our court having the substantial chance of winning on the contract was to create a standing barrier that is higher than the Article III barrier. Right. So where is your injury here any greater than your Article III injury? The injury, and the issue is really it goes to the prong of the direct economic interest prong. You know, the circuits, the Tucker Act doesn't define. Your injury is that you're out of the big. Right. That's the injury. Do you want to say the rebuttal time? Please. Ms. Fick. Your Honor, may it please the Court. Despite Orion's best effort to complicate this protest, it is undisputed that Orion did not submit a complete proposal on time, and it is undisputed that the solicitation clearly required complete cost breakout data to be submitted on time. This is a harsh decision, isn't it? He came in soon thereafter with the data, and they said, well, you're out of it. Well, there is nothing in the solicitation that would have suggested that they would have a second opportunity to submit the data. At the time that the Army rejected, or well, the time initially when the solicitation was issued, the Army planned not to conduct discussion. So this was almost like a sealed bidding situation. The Army rejected Orion for being noncompliant in April. It was April 8, 2011. It was only later in the process, after it had done the initial compliance review, that it actually decided to conduct discussions and do a competitive range. Well, when did it strike the competitive range? It struck the competitive range before you responded to the first protest. Do you know the date? Orion filed its first— Do you know the date when the competitive range was struck? I know that the agency announced that it intended to hold discussions and to establish a competitive range. It was April—I'm sorry.  That's after, well, after the initial protest was in April. Yes, Your Honor. And in your briefs, or somewhere in the record, you concede that the competitive range was created before the agency responded, before they responded to the initial protest. No, Your Honor, I don't think that's correct on the facts. The agency—Orion filed the protest challenging— On April 11, 2011, Orion protested the decision challenging the removal. On April 27, the agency denied the protest based upon Orion's failure to comply with the explicit and mandatory requirements in Section L. And on May 5, Orion filed the first GAO protest. It was only June 20, 2011— Was the agency required to reject the proposal? They got the proposal, and it's empty. It's got some blanks, right? Were they required to reject? Yes, Your Honor. No, required as a matter of law. Under the terms of the solicitation that the agency had established, they were required to conduct a cost realism analysis. And here the solicitation said, you have to submit all this information on time, and we have to be able to evaluate you for cost realism. So I think here the agency couldn't— It's very important, because the whole argument here is that, from the other side, is that the agency had the discretion, if it wanted to, to keep Orion in the game, had they wished they could have kept Orion in the game. And they're saying that we were arbitrarily thrown out. Now, what can you point to that says that the agency was required to throw it out because it was incomplete? Because the language all says, you may be rejected if you don't comply. You may be rejected if you're not complete. It does say maybe, but it also indicated that the agency required— And that's forceful, correct? I'm sorry. I don't think it's forceful, given that the agency repeatedly warned all offerors that they had to comply with all instructions in the solicitation. And it's absolutely undisputed that they were required to include all of this information in their initial proposal and were warned that there wasn't going to be— But one of your requirements had been that you have to sign it in ballpoint ink, and somebody signed it in ink ink, and then the agency could throw it out and there'd be no grounds to test it. I don't think this is the same thing— Your discretion is totally unfettered. I don't think it's totally unfettered. In this case, the agency could— There was insufficient information to perform analysis that the agency is required to perform under the Federal Acquisition Regulation at 15.404-1B. How do we know that? It says that for cost contracts, the agency has to perform a cost realism analysis. And how do we know they couldn't have performed a cost realism analysis without having this backup data? Well, if you look at FAR 15.404-1B, it says that the agency is required to look at each element of the offeror's cost breakout data to evaluate whether it's realistic and whether they have an adequate understanding of the requirement. And here, they clearly could not look at each element because they didn't know each element. They didn't know what the general administrative rate was. They didn't know what the different holidays that Orion was going to pay or any offeror unless they provided that information. And they would have had to have made— Orion hasn't even tried to argue how they could have backed into that information. Can we talk about weeks for a second? Why is it that Orion doesn't have standing under weeks? Orion doesn't have standing under weeks because it was not injured by anything that the agency did. It was eliminated from this competition due to its own errors, which it has— there's no question about it. But what would happen if Orion could prove that— see, they're of the view that you're wrong. They're of the view that the contracting officer, if he or she had wanted to, could have performed the various cost and price tests without having all that backup data. That's their view. You disagree with that? I disagree. And I also think it's important to note that there's no dispute in this case that they didn't provide the information and that it was required. So why do we understand that? What I'm trying to get at is a situation— I'll tell you what I'm worried about. I'm worried about a situation where someone puts in a proposal and the government rejects it. And the government rejects it for what we would all agree is an impermissible reason, like race discrimination or something like that. Under Judge Sweeney's analysis, and under your brief's analysis, or under Judge Sweeney's analysis, there would be no standing under weeks for someone who mounted that case. Someone came in and said, my proposal was rejected because of discrimination and I have an affidavit here and I'm willing to stand up to Rule 11 to try to litigate this. She would say, I'm sorry, her analysis is, I'm sorry you don't satisfy weeks. Well, I think it would be dependent upon the factual inquiry. The way that 1491 is set up is that you have to establish that you're an interested party. Under rec services, you have to meet both prongs. And there is a factual inquiry that occurs at the motion to dismiss stage. You're arguing in your brief that the substantial chance of winning the contract is the test we should be using here. And you're saying we should be using that here because they're arguing that they were entitled to be put in the competitive range. Well, Your Honor, we think that— That's what you say in your brief. Your Honor, I do think the substantial chance is the appropriate test. But when you tell me that's appropriate test because you're crediting their allegation that they could have been put in the competitive range, at the same time you tell me that there's no way they could be put in the competitive range, I don't understand your argument. Well, it may have been stated not as clearly in our brief, but the test Judge Sweeney applied to under the substantial chance test was whether they would have a chance to compete if the process became competitive. And Judge Sweeney articulated it so that it wouldn't be an onerous requirement. For example, if someone was excluded from the competitive range under her test, they would still be able to file a protest. It's to create the expectations in the Army that when they get an offeror who clearly, and by its own admission, didn't follow the instructions, someone who was submitted a proposal late or someone who's otherwise ineligible— But the argument is circular. They can't get in the competitive range because they can't be cost-realistic because they didn't supply the data. And so for that reason, they can't show that they would have a chance of winning the contract. It seems to me that the substantial chance of winning the contract standing test doesn't really fit very well here. And Orion is entitled to argue standing under weeks, which it does. And what I'm saying is I don't understand why Orion doesn't have standing under weeks when they say we were arbitrarily and capriciously denied— we were thrown out when we believed the agency could have, if it wanted to, kept us in. Now, on the merits, the agency says we decided not to keep you in, right? Because it would have been too cumbersome. The agency didn't actually say ever we couldn't have evaluated. They said it might have been burdensome. The agency said it could not perform the required cost-realism analysis based upon the information that Orion provided. That is in— I want to take you back to your earlier discussion of the word may and your belief that that is, in fact, a mandatory bar. And I think you're on dangerous ground because it seems to me that what you're saying to us is that we should issue an opinion that says when the Army has that word may in there, they're still bound because of the cost-realism test, and they're never permitted, ever. You want us to issue an opinion that says the Army can't come back in and say, no, we'd like to get that data. Are you telling us that? Well, I think the Army didn't want this— the way the Army structured the solicitation, it wrote— So if the Army structures a solicitation that says we may do this, we may reject it, you're saying that they have to reject it and that they can't ask for further data. You want us to issue an opinion to that effect? I think in looking at the standing inquiry, it's different than focusing on the may or may not. The standing is whether they submitted a complete proposal. I understand that. And that's undisputed, and they couldn't perform required analyses. And these other— The standing turned on the incomplete proposal. Because the agency couldn't review the proposal for— That's the merits. That's the merits is whether or not the agency correctly threw them out. I don't think— I think that at the initial stage, there might be a question whether you got to the— When you submit an incomplete proposal, and it's admittedly incomplete— It depends on what— How is it incomplete? Is it incomplete because it was in duplicate instead of triplicate? Is it incomplete because what was left out is material? And absolutely the agency cannot move forward without that omitted information? Well, this is a case where they did not— where they admitted five of eight of their teaming subcontractors, including one that was supposed to provide 20% of the work. Well, we know what was admitted, but their argument is that the agency was not required to throw them out. The agency had discretion to throw them out. And you haven't convinced me as to why the agency was required to reject, because of the incompleteness, as opposed to exercising its discretion. And their standing argument is, is where the agency has discretion to do something, and we think they have exercised their discretion arbitrarily, we think we're entitled to come in court to learn whether or not we're right or wrong on whether the agency behaved correctly. But that can occur at the motion to dismiss stage. Under the court, the court has the right at the motion to dismiss stage to look at jurisdictional facts. And here the United States showed, and Orion didn't disagree, that they submitted an incomplete proposal, and the government was not able to further evaluate Orion. And so given that they couldn't establish jurisdictional facts, that they were an interested party, as they're required to do under the— Tell me again where in the record you said the agency said that it was actually impossible for it to proceed forward, because of the absent information. The agency said that it could not perform the agency— What's the exact one, and the page please? Page 389, I believe. 389? At 389, the offeror failed to either provide proof that it possesses an epithelium. The offeror failed to provide or ensure its seeming partners provided the required pricing information. Further, for the subcontractors that did provide it, there were inconsistencies. We know that. The agency also stated that your proposal at 318, your proposal failed to provide required cost price information for your seeming partners. We know that. We know that. Consequently, your price proposal cannot be evaluated for price reasonableness and cost realism, and that was in the letter dated April 8, 2011. What page is that? That's 318 in the administrative record. Would you like to say the remainder of your time? Yes, Your Honor. We just wanted to make the point that even if the court disagrees, we fully briefed the motion for judgment, or the motion to dismiss, we fully briefed the motion for judgment on the administrative record. There was a lengthy hearing, and certainly there's more than ample basis in the record for affirming the government's decision. Mr. Boland, you have a little rebuttal time. Thank you, Your Honor. I don't have the citation exactly there, but we cited in our brief that in a declaration, I believe it was in one of the GAO proceedings, the contracting officer did not say it was impossible to receive the evaluation, but he said it would likely impede. And that's one of the issues here, is that there was sort of a premature upfront determination that, okay, there's this omission, this might be inconvenient for us, and this might impede it, but I think that the record shows that it was not impossible to actually evaluate the technical proposal, or even, frankly, to proceed with the realism analysis. And that's one important point. Even if the affected CLINs were deemed to be unrealistic, that's really the consequence of, and the purpose of the realism evaluation is to determine whether they are realistic. The consequences would simply be these particular positions are unrealistic. That doesn't preclude an award under the best value scheme. That simply means that the government would either adjust those prices up, to a figure that the government has determined is a realistic minimum. I forgot to ask, does anybody know what the status of this contract is? Is it still open? Has the contract been let? Has the contract been let? I do not have knowledge of. It is a multiple award. I believe the government, I don't know. Your Honor, the agency has awarded seven multiple award tax order contracts in September. One final thought, Mr. Bullock? Ultimately, I think the key issue here is that the court's decision would set a bad precedent if an offeror does not have standing to challenge and seek judicial review. Certainly under the Tucker Act, an offeror is entitled to have a court look at whether or not an agency's remissive action and the timing and the circumstances was reasonable or arbitrary capricious. Thank you very much. Thank you. We will take the case under advisement.